UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK and THE PEOPLE OF
THE STATE OF NEW YORK,

                                        Plaintiffs,

                        - against -

FEDEX GROUND PACKAGE SYSTEM, INC.,

                                        Defendant.

**OPINION AND ORDER**

14 Civ. 8985 (ER)

Ramos, D.J.:

        The City of New York ("City") and The People of the State of New York ("State," and

collectively, "Plaintiffs") bring this action against FedEx Ground Package System, Inc.

("FedEx"), alleging that it knowingly delivered unstamped cigarettes throughout the country,

including New York City and State, between 2005 and the present.  Plaintiffs seek the

appointment of a special master, damages, and penalties under the Contraband Cigarette

Trafficking Act, 18 U.S.C. § 2341 *et seq.* ("CCTA"); treble damages and attorney's fees under

the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); an

injunction and penalties under New York Executive Law ("N.Y. Exec. Law") § 63(12) and New

York State Public Health Law ("NYPHL") § 1399-*ll*; and penalties under the Assurance of

Compliance that FedEx entered into with the Attorney General of the State of New York ("AG")

in 2006.  Before the Court is FedEx Ground's motion to dismiss Plaintiffs' Amended Complaint.

(Doc. 32).[1]  For the reasons set forth below, FedEx's motion is GRANTED in part and DENIED

in part.

---

[1] Docket numbers refer to Case No. 14 Civ. 8985, unless otherwise noted.

## I. BACKGROUND

Plaintiffs each impose an excise tax on the sale of cigarettes.  Amended Complaint ("Compl.") (Doc. 23) ¶ 22.[2]  The excise taxes are pre-paid by licensed cigarette stamping agents through their purchases of tax stamps, which they must then affix to every package of cigarettes sold in the City and/or State.  *Id.* at ¶¶ 23–25.  By law, stamping agents are required to incorporate the amount of the tax into the price of the cigarettes, thereby ultimately passing the tax along to the consumer.  *Id.*  New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's steam of commerce.  *Id.* at ¶ 23.

### A. FedEx's Assurance of Compliance with the AG

In 2004, the New York Attorney General began investigating FedEx and other common carriers for violating NYPHL § 1399-*ll*, which prohibits the delivery of cigarettes to residences. *Id.* at ¶ 27.  Section 1399-*ll*(1) states that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state governments.  *Id.* at ¶ 28.  Section 1399-*ll*(2) provides, in turn:

> It shall be unlawful for any common or contract carrier to knowingly transport cigarettes to any person in this state reasonably believed by such carrier to be other than a person described in [1399-*ll*(1)].  For purposes of the preceding sentence, if cigarettes are transported to a home or residence, it shall be presumed that the common or contract carrier knew that such person was not a person described in [1399-*ll*(1)]….

In February 2006, FedEx entered into an Assurance of Compliance ("AOC") with the AG, in which it agreed, *inter alia*, to "at all times comply with Pub. Health L. 1399-*ll*," terminate

---

[2] For the purposes of the instant motion, the Court assumes the allegations in Plaintiffs' Amended Complaint to be true and relies exclusively on information contained therein, as well as documents "integral" to the Amended Complaint, and documents that Plaintiffs possessed, knew about, and relied upon in framing their pleadings.  *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011).

relationships with shippers that unlawfully attempt to use FedEx to ship cigarettes to residential addresses, and report those shippers to the AG's Office. *Id.* at ¶ 29. FedEx also agreed to monitor and investigate its own shipments to assure compliance with the AOC. *Id.* FedEx later agreed to give nationwide effect to the AOC. *Id.*

The AOC also required FedEx to implement a policy prohibiting the shipment and delivery of cigarettes to individual consumers, and to revise its internal policies to ensure their compatibility with the terms of the AOC. *Id.* at ¶ 30. FedEx further agreed that it would pay the AG $1,000 for every violation of the AOC. *Id.* at ¶ 31.

## B. The Cigarette Selling Enterprises

Plaintiffs allege that from 2005 to the present, FedEx has knowingly made shipments of tens of thousands of cartons of cigarettes,[3] including thousands of cartons of unstamped cigarettes, to New York State and New York City on behalf of twenty-one cigarette sellers (collectively, "Cigarette Sellers"). *Id.* at ¶¶ 32–34.[4] Plaintiffs specifically claim that, until at least 2015, FedEx transported and distributed thousands of cartons of unstamped cigarettes for some of the Cigarette Sellers to entities that were unlicensed to deal in cigarettes or tobacco products in New York State. *Id.* at ¶¶ 51–52.[5] At all times relevant to the Complaint, Plaintiffs allege that each of the Cigarette Sellers utilized FedEx and other delivery services to ship unstamped cigarettes directly to residents of New York City and State. *Id.* at ¶ 87.

---

[3] One carton of cigarettes contains ten (10) packs of twenty (20) cigarettes each. Compl. ¶ 26.

[4] The Cigarette Sellers named in the complaint are: Your Kentucky Tobacco Resource LLC, Cigarettes for Less, Shinnecock Indian Outpost Hidden Spirits Smoke Shop, Shinnecock Indian Nation/Shinnecock Nation Authority, AJ's Cigar, Two Pine Enterprises, Anthony Bergstrom, Discount Tobacco Outlet, Kee Missouri DC, Smokin' Joe's Sanborn, Lakeside Enterprises, J. Conrad Seneca, B&B Express Wholesale, Flatwater Trading Co., Lake Erie Tobacco Co., Native Pride/Six Nation, Ohserase, Ramona Bennett, Rock River Imports, and Tarbell Management Group. Compl. ¶ 63.

[5] These allegations pertain to: Smokin' Joe's Sanborn, J. Conrad Seneca, and Ohserase. Compl. ¶ 52.

**C. FedEx's Role in the Cigarette Selling Enterprises**

Plaintiffs allege that FedEx had full knowledge that the Cigarette Sellers were shipping unstamped cigarettes to individual residences in New York City and State, in violation of the AOC and state and federal law.  *Id.* at ¶ 32.

The Complaint alleges that each of the Cigarette Sellers constituted a RICO enterprise, which was conducted through a pattern of racketeering activity, consisting principally of thousands of instances of contraband cigarette trafficking.  *Id.* at ¶¶ 75–78.[6]  FedEx is alleged to have been associated with the enterprises by providing them with delivery services, package tracking services, customer relations services, software and hardware services, business advice, and generally facilitating the enterprises' deliveries of contraband cigarettes.  *Id.* at ¶ 81. Specifically, the Complaint alleges that FedEx communicated on a regular basis with employees of the Cigarette Sellers regarding their business trends, volume, and needs.  *Id.* at ¶ 40.  For example, FedEx employees communicated with Cigarette-Seller employees regarding lost, stolen, or delayed shipments.  *Id.* at ¶ 43.  The Complaint also alleges that FedEx knew from internal notifications that Cigarette Sellers were shipping cigarettes to individual customers at residential addresses.  *Id.* at ¶ 45.  Plaintiffs further claim that some of the Cigarette Sellers' websites informed customers that their orders would be shipped by FedEx.  *Id.* at ¶ 46.

Plaintiffs allege that FedEx participated in the management and operation of the Cigarette Sellers by controlling the pick-up and delivery of unstamped cigarettes and delivering those cigarettes nationwide, specifically by:  (a) receiving unstamped cigarettes from the Cigarette

---

[6] Plaintiffs allege that each Cigarette Seller constituted an enterprise within the meaning of 18 U.S.C. § 1961(4) in that each was either a corporation or a sole proprietorship with several employees and/or associates.  *See* Compl. ¶ 75.  Plaintiffs alternatively claim that (i) each Cigarette Seller's owners and/or employees constituted an association-in-fact enterprise within the meaning of § 1961(4), or (ii) FedEx and each Cigarette Seller's owners and/or employees constituted an association-in-fact enterprise.  *Id.* at ¶ 76.

Sellers for ultimate distribution to consumers; (b) subject to FedEx's own methods and means, and at FedEx's discretion, using information provided to FedEx by the Cigarette Sellers to transport and distribute the cigarettes to their customers; (c) allowing the Cigarette Sellers and their customers access to FedEx's package-tracking system; and (d) providing Cigarette Sellers with general logistics, marketing, and delivery-support services. *Id.* at ¶ 83. In sum, the Complaint alleges that the Cigarette Sellers would not have been able to service the unstamped-cigarette market without FedEx's purposefully close involvement in the enterprises. *Id.*

**D. Injury to the City and State**

Plaintiffs claim that FedEx's shipments of unstamped cigarettes caused them injury in the form of lost tax revenue amounting to $15 per carton delivered to the City, and ranging from $15 to $43.50 per carton delivered to the State. *Id.* at ¶¶ 14, 26.[7] Furthermore, Plaintiffs allege that large-scale cigarette tax evasion undercuts the salutary effects of high cigarette prices, increasing use inside New York and endangering the public health of those citizens. *Id.* at ¶¶ 4–10.

**E. Procedural Background**

These same parties are currently litigating a previously-filed, related action before this Court, involving substantially similar claims in relation to four cigarette sellers expressly carved out from the instant case. *See City of New York v. FedEx Ground Package Sys.*, No. 13 Civ. 9173 (S.D.N.Y.) ("*FedEx I*"). On March 9, 2015, the Court granted in part and denied in part FedEx's motion to dismiss the complaint filed in *FedEx I*. *City of New York v. FedEx Ground Package Sys., Inc.*, 91 F. Supp. 3d 512 (S.D.N.Y. 2015). Specifically, the Court dismissed Plaintiffs' claim for civil penalties under the NYPHL, holding that the statute did not authorize

---

[7] According to the Complaint, the New York City excise tax was $1.50 per pack, or $15 per carton, at all times relevant to the instant action. Compl. ¶ 26. On June 3, 2008, the New York State excise tax was increased from $15 per carton to $27.50 per carton. *Id.* The State tax was again increased on July 1, 2010, to $43.50 per carton. *Id.*

Plaintiffs to seek civil penalties prior to 2013.  *Id.* at 527–29.  The Court also dismissed Plaintiffs' public nuisance claim.  *Id.* at 530.  The Court denied FedEx's motion with respect to claims under the CCTA and RICO.  *Id.* at 520–27.  Plaintiffs did not assert a claim under N.Y. Exec. Law § 63 in *FedEx I*.

As of this date, the parties are in the process of discovery, which is due to be completed by October 20, 2016.  (13-cv-9173, Doc. 161).  Also pending is Plaintiffs' motion to consolidate this case ("*FedEx II*") and *FedEx I*, which was filed on January 29, 2016.  (Doc. 62).

FedEx filed the instant motion on July 16, 2015.  (Doc. 32).

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not, however, required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III. DISCUSSION

### A. Sufficiency of Alleged Facts About Cigarette Sellers

FedEx first argues that, generally, the Complaint does not plead adequate facts to make it plausible that the Cigarette Sellers were responsible for unlawfully shipping unstamped cigarettes. Memorandum of Law in Support of FedEx's Motion to Dismiss ("FedEx Br.") (Doc. 34) at 3–7. The Court finds otherwise.

Plaintiffs have alleged that, through 2015, FedEx knowingly distributed into New York City and State thousands of cartons of contraband cigarettes on behalf of unlicensed manufacturers, wholesalers, and distributors. Compl. ¶ 51. The Complaint details FedEx's shipping practices, which suggest that FedEx sales representatives and employees had knowledge of the illegal shipments. *See, e.g.*, *id.* at ¶¶ 35, 53 ("FedEx sales representatives maintain close relationships with FedEx clients"); ¶¶ 38, 56 ("FedEx employees routinely visit the businesses of FedEx's [clients] to make package pick-ups"); ¶¶ 40, 57 (FedEx employees communicate "on a regular basis with its [clients] in writing, by telephone, and in person

regarding, among other things, business trends, volume, and needs").  Furthermore, Plaintiffs

have represented (and FedEx does not dispute) that discovery in *FedEx I* has revealed that FedEx

did *in fact* make thousands of cigarette shipments for the shippers implicated in *FedEx I*.  *See*

Memorandum of Law of Plaintiff the City of New York ("NYC Opp'n") (Doc. 37) at 3.

FedEx nonetheless asserts that Plaintiffs have failed to "provide the requisite factual

predicate that the shippers at issue unlawfully shipped cigarettes through FedEx Ground."

FedEx Br. at 5.  Yet, the names of all the shippers listed in *FedEx II* are derived from discovery

conducted in *FedEx I*, indicating that at the very least, these shippers made deliveries through

FedEx.  Furthermore, the names of many of the shippers allow for—if not compel—the plausible

inference that they were indeed shipping cigarettes.  They include:  "Your Kentucky Tobacco

Resource," "Cigarettes For Less," "Hidden Spirits Smoke Shop," "Discount Tobacco Outlet,"

"Smokin' Joes," and "Lake Erie Tobacco Co."  *Id.* ¶ 63.

Determining the plausibility of a claim is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Plaintiffs' allegations combined with the evidentiary record developed in *FedEx I* render

Plaintiffs' claim that FedEx knowingly delivered unstamped cigarettes for the shippers named in

the Complaint entirely plausible.

**B. NYPHL § 1399-*ll***

Plaintiffs allege that FedEx has violated NYPHL § 1399-*ll* by knowingly transporting

cigarettes to persons not authorized to receive deliveries under § 1399-*ll*(l).

As originally enacted in 2000, § 1399-*ll* authorized New York State's Commissioner of

Health to impose a civil penalty for each violation of the statute.  *See* NYPHL § 1399-*ll*(5)

(McKinney 2001).  On September 27, 2013, the statute was amended in two significant respects.

First, § 1399-*ll* was amended to increase the amount of civil penalties recoverable under the statute.  § 1399-*ll*(5).  Second, the statute was amended to explicitly provide that both the AG and the corporation counsel of any political subdivision imposing a cigarette tax can bring an action to recover the civil penalties provided by § 1399-*ll*(5).  § 1399-*ll*(6).

FedEx challenges the NYPHL claim on three grounds:  (1) the 2013 amendment is not retroactive, and therefore Plaintiffs are not authorized to sue for violations taking place between 2005 and 2012—the time period alleged in the Complaint; (2) Plaintiffs' NYPHL claim is preempted by the PACT Act; and (3) the vast majority of Plaintiffs' alleged NYPHL violations are barred by the statute of limitations.  Because the Court finds that the NYPHL claim is preempted by the PACT Act, we need not consider FedEx's other challenges.

 "The PACT Act regulates remote sales of cigarettes, and imposes a variety of requirements on sellers of cigarettes with the aim of ensuring that taxes are paid and cigarettes are not sold to children."  *City of New York v. Wolfpack Tobacco*, No. 13 Civ. 1889 (DLC), 2013 WL 5312542, at *3 (S.D.N.Y. Sept. 9, 2013).  The PACT Act generally provides that "no person who delivers cigarettes or smokeless tobacco to consumers" shall "knowingly complete…its portion of a delivery of any package for any person whose name and address are on" the federally-maintained list of unregistered or noncompliant delivery sellers.  15 U.S.C. § 376a(e)(2)(A).

The PACT Act also contains a number of provisions exempting certain entities from suit, including one that is relevant here.  The Act provides that it "shall not apply to a common carrier that…is subject to a settlement agreement described in subparagraph (B)."  § 376a(e)(3)(A).  The Act specifically defines such settlement agreements to include "the Assurance of Compliance entered into by the Attorney General of New York and Federal Express Corporation and FedEx

Ground Package Systems, Inc. on or about February 3, 2006, if [that agreement] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers." § 376a(e)(3)(B)(ii).  The Act also prohibits a state from enforcing laws against common carriers that prohibit "the delivery of cigarettes or other tobacco products to individual consumers or personal residences," unless the state proves that the common carrier is not exempt due to a settlement agreement.  § 376a(e)(5)(C)(ii).

Put another way, if the AOC qualifies as a "settlement agreement" under the PACT Act, FedEx is exempted and no NYPHL claim can be brought against it.  However, the exemption only applies if the AOC "*is honored throughout the United States* to block illegal deliveries of cigarettes or smokeless tobacco to consumers." § 376a(e)(3)(B)(ii)(I) (emphasis added).  The question posed, then, is what "is honored throughout the United States" means.  In a recent case similar to this one, *New York v. United Parcel Service, Inc.* ("*UPS I*"), Judge Forrest issued a decision in which she identified competing interpretations of the phrase "is honored throughout the United States."  No. 15 Civ. 1136 (KBF), 2015 WL 5474067, at*7 (S.D.N.Y. Sept. 16, 2015).  The court in *UPS I* recognized that, on the one hand, "honored" could mean "recognized" by the various states throughout the United States, and on the other, it could mean "complied with" by a common carrier throughout the United States.

The *UPS I* court concluded:  "[T]he phrase 'is honored throughout the United States' means 'recognized by' all states in the nation.  Put otherwise, 'is honored' means 'is recognized,' and has nothing to do with a common carrier's compliance with the specific terms of any particular settlement agreement." *Id.* at *7.  In other words, the phrase is analyzed from the perspective of the states' recognition of a particular settlement agreement, not from the carrier's compliance with that agreement.  Therefore, the court found that the provision "does not purport

to reach questions of compliance or noncompliance with obligations assumed under any particular agreement." *Id.*

The *UPS I* court noted that, although the plaintiffs had alleged that UPS failed to comply with the settlement agreement between UPS and the State, plaintiffs had not alleged that the settlement agreement was not recognized by other states nationwide. *Id.* at *9. Consequently, the court dismissed the plaintiffs' NYPHL claim, because plaintiffs had not met their burden of proving that the PACT Act exemption did not apply. *Id.* at *10; *see* 15 U.S.C. § 376a(e)(5)(C)(ii) ("No State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco products to individual consumers or personal residences without proof that the common carrier is not exempt under paragraph (3) of this subsection.").

In a letter dated September 25, 2015, FedEx notified the Court of the decision in *UPS I*, which was issued after briefing for the instant motion was completed. (Doc. 42). FedEx contends that, based on *UPS I*, Plaintiffs' NYPHL claim here is also preempted by the PACT Act, because Plaintiffs have not alleged that the AOC was not recognized nationwide. *Id.* Plaintiffs submitted a response letter contending that the Court should not follow *UPS I*, and instead conclude that the provision "honored throughout the United States" means "complied with" by FedEx throughout the United States. (Doc. 45). According to Plaintiffs, it therefore follows that because they have clearly alleged that FedEx has not complied with the AOC, the PACT Act exemption does not apply and the NYPHL claim survives.

After reviewing the *UPS I* opinion, the Court adopts its interpretation that "honored throughout the United States" means "recognized" by the various states. In addition to agreeing with the *UPS I* court's analysis of the language and structure of § 376a(e)(3), the Court finds that understanding "honored" to mean "recognized" comports with the purpose of the PACT Act. In

passing the PACT Act, Congress generally sought to enact a uniform, nationwide scheme to regulate the delivery of cigarettes.[8]  However, Congress recognized that the state of New York had already entered into a number of settlement agreements with major carriers to halt illegal cigarette deliveries.[9]  Rather than allow the PACT Act to preempt those agreements, Congress created an exemption to keep them in place.

The likely reason Congress was willing to exempt such agreements as the AOC is that these agreements were represented by the states to be national in scope.[10]  *See also supra* n.9.  So long as a settlement agreement was effective throughout the United States, there was no reason for a federal nationwide scheme to intervene—the settlement agreement already ensured that the carrier was acting in conformity with the PACT Act's goals across the country.

---

[8] Congressional testimony suggests that the primary target of the PACT Act was actually the United States Postal Service, against whom states were powerless to enforce cigarette delivery regulations.  *See* 156 Cong. Rec. H1526-01, 2010 WL 956208, at *27 (Mar. 17, 2010) (statement of Rep. Weiner) ("There's only one common carrier that today still delivers tobacco through the mail—the United States Postal Service.  They came to us and said, Congress, if you really want us not to mail this, you've got to define what a nonmailable material is, and you've got to add that to the list.  That's what the PACT Act does."); *Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing on H.R. 4081 & H.R. 5689 Before the Subcomm. on Crime, Terrorism, & Homeland Sec. of the H. Comm. on the Judiciary,* 110th Cong. 79 (2008) ("2008 Hearing") at 9 (testimony of Rep. Weiner) ("Right now, the only one that is carrying [untaxed cigarettes], ironically, is [USPS].  So the only one who would actually be covered by this in a real practical sense is [USPS].  Everyone else would already be following their status quo operations."); 2008 Hearing at 79 (statement of David S. Lapp, Chief Counsel, Tobacco Enforcement Unit, Office of the Attorney General of Md.) (explaining that states "have curbed deliveries by all the major carriers except one:  the U.S. Postal Service, which asserts it has no legal authority to refuse cigarette shipments.").

[9] 2008 Hearing at 124 (Statement of Eric Proshansky, Deputy Chief, Division of Affirmative Litigation, New York City Law Department) ("The states, acting through the [NAAG], and with the assistance of the Bureau of Alcohol, Tobacco, Firearms & Explosives, negotiated an unprecedented set of agreements with ... common carriers in which members of those industries have pledged to end *any participation* in the Internet cigarette business.") (emphasis added); 2008 Hearing at 79 (Statement of David S. Lapp, Chief Counsel, Tobacco Enforcement Unit, Office of the Attorney Gen. of Md., testifying on behalf of NAAG) ("Along with other State attorneys general, we have attained agreements with…the major delivery companies, including UPS, FedEx and DHL, all to stop Internet sales of cigarettes.").

[10] *See* Cong. Rec. S5822-01, 2009 WL 1423723, at *104 (May 21, 2009) (statement by Sen. Kohl) ("In recognition of UPS and other common carriers' agreements to not deliver cigarettes to individual consumers *on a nationwide basis*, pursuant to agreements with the State of New York, we have exempted them from the bill provided this agreement remains in effect.") (emphasis added); *see also supra* n.9.

To adopt Plaintiffs' interpretation of "honored" to mean "complied with," would undermine the purpose of providing an exemption for carriers who have come to a nationwide settlement agreement.  If the City or State could bring suit against a carrier who is not complying with the settlement agreement by bringing a PACT Act claim, there would be no point to a nationwide agreement, with its own set of remedies, which was recognized by Congress to serve the same purpose as the PACT Act.  In this sense, a PACT Act claim is duplicative of a claim for violating the AOC, to the extent that the AOC is in fact an agreement recognized throughout the United States.[11]

Plaintiffs have not made any allegations suggesting that the AOC did not have nationwide effect.  Indeed, Plaintiff's only pertinent allegation with regard to the AOC is that *FedEx* agreed to give nationwide effect to the AOC.  Compl. ¶ 29.  Consequently, the Court finds that Plaintiffs have not met their burden of demonstrating that FedEx is not exempt from the PACT Act, and thus subject to enforcement under the NYPHL.  Plaintiffs' NYPHL claim must therefore be dismissed.  Of course, as discussed below, Plaintiffs retain their rights to enforce the terms of the AOC.

---

[11] A distinction could be made as to *who* must "recognize" an agreement "throughout the United States" in order for the PACT Act exemption to apply.  As the parties' supplemental submissions on this point make clear, the term "recognized" could refer to the *carrier's* recognition that the agreement is binding upon it throughout the United States, or it could refer to the *states'* recognition that the agreement is binding upon the carrier throughout the United States.  The Court does not see this as a meaningful distinction, however.  Ultimately, recognition by *both* the states and the carrier is necessary to serve the PACT Act's purpose of exempting a common carrier from suit if a settlement agreement is truly nationwide in its operation.  If either the carrier or other states do not recognize an agreement as having nationwide effect, then the purpose of the exemption is undermined.  The Court notes, however, that this interpretation would not necessarily allow a single state to unilaterally strip FedEx of the benefit it bargained for in the AOC by simply declaring that state's non-recognition of the agreement—it is possible that the PACT Act exemption may still apply if FedEx voluntarily complies with the AOC even after it has been deemed "inactive" by virtue of one state's non-recognition.  *Cf.* 15 U.S.C. § 376a(e)(3)(A)(ii) (exempting carrier from PACT Act and state laws "if a settlement agreement described in subparagraph (B) to which the common carrier is a party is terminated or otherwise becomes inactive," so long as the carrier "is administering and enforcing policies and practices throughout the United States that are at least as stringent as the agreement").

**C. N.Y. Exec. Law § 63(12)**

Plaintiffs next attempt to recover civil penalties and enjoin violation of § 1399-*ll* through what they characterize as an independent, standalone action under N.Y. Exec. Law § 63(12). Compl. ¶¶ 128, 138(ii).  This claim fails as alleged.

N.Y. Exec. Law § 63(12) provides that, where "any person" engaged in "repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality" in conducting business, the New York Attorney General may apply on behalf of the State "for an order *enjoining* the continuance of such business activity or of any fraudulent or illegal acts, [or] directing *restitution* and *damages*…." (emphasis added).  As the text makes clear, the State is generally limited to the three enumerated remedies when brining actions under that provision— injunctive relief, restitution, and damages—and civil penalties are not included.  *See State v. Solil Mgmt. Corp.*, 491 N.Y.S.2d 243, 249 (N.Y. Sup. Ct.) ("[The State] is not entitled to punitive damages or treble damages, or both, from respondent.  N.Y. Exec. Law § 63(12) does not provide for either of these extraordinary remedies and petitioner is limited to obtaining restitution or compensatory damages."), *aff'd*, 114 A.D.2d 1057 (N.Y. App. Div. 1985); *see also People ex rel. Spitzer v. Frink Am., Inc.*, 2 A.D.3d 1379, 1380 (N.Y. App. Div. 2003) ("[S]ection 63(12) 'create[s] no new claims but…provide[s] *particular* remedies and standing in a public officer to seek redress on behalf of the State and others.'" (emphasis added) (alterations in original) (quoting *State v. Cortelle Corp.*, 38 N.Y.2d 83, 86 (1975))).

Plaintiffs point to two types of cases in support of their position that they are not precluded from seeking civil penalties in a § 63(12) action:  (i) cases in which courts have held that the State can obtain § 63(12) relief "beyond the remedies available" in the underlying statute being enforced, and (ii) cases in which the State was awarded remedies beyond the three listed in

§ 63(12), including civil penalties.  Memorandum of Law of Plaintiff the People of the State of New York ("NYS Opp'n") (Doc. 38) at 18–19.  The first type merely acknowledges that the State can obtain injunctive relief, restitution, or damages via § 63(12), even if the underlying statute does not provide for those remedies.  *See Frink Am.*, 2 A.D.3d at 1380–81 (discussing only injunctive relief and restitution as recoverable remedies under § 63(12) that go "beyond" remedies in underlying statute).  The second type involves awards to the State for civil penalties under § 63(12), but only because the underlying statute expressly empowered the AG to levy such penalties.  *See* NYS Opp'n at 18–19 & n.8 (citing cases affirming "the Attorney General's authority to obtain penalties under § 63(12), *via the penalty provision of any underlying statute*" (emphasis added)); Reply Memorandum of Law in Further Support of FedEx's Motion to Dismiss ("FedEx Rep.") (Doc. 40) at 8 n.5 (demonstrating that Plaintiffs' cases involve statutory provisions explicitly authorizing the AG to seek penalties).  These two categories of cases simply stand for the straightforward proposition that, in any given case, the AG can seek penalties available under both § 63(12) *and* the underlying statute being enforced.  Plaintiffs do not cite any case in which the AG is awarded civil penalties via a § 63(12) action to enforce an underlying statute that does not itself empower the AG collect civil penalties.

While NYPHL § 1399-*ll* has authorized the AG to collect civil penalties since 2013, Plaintiffs have not adequately pleaded that their § 1399-*ll* claim is outside the ambit of the PACT Act's presumptive exemption for nationwide settlement agreements, as was already discussed. Plaintiffs thus cannot use § 63(12) to collect civil penalties under NYPHL § 1399-*ll* at this juncture.  Furthermore, while § 63(12) would allow for an injunction to prevent repeat violations of § 1399-*ll*, the fact that Plaintiffs have not adequately pleaded that FedEx can actually be held liable under § 1399-*ll* compels dismissal of this claim for relief as well.  Plaintiffs' fourth and

sixth claims for relief, to the extent they rely on § 63(12), are thus dismissed without prejudice and with leave to replead.[12]

## D. AOC

Fresh from arguing that the AOC provides nationwide coverage and thus insulates FedEx from NYPHL and PACT Act claims, FedEx also argues that the AOC, for a variety of reasons, is not enforceable at all.

The AOC was entered into pursuant to another provision of the New York Executive Law, N.Y. Exec. Law § 63(15), and essentially serves as a "regulatory mechanism, similar to a deferred-prosecution agreement, in which the Attorney General agrees to forego suit…in exchange for a company's agreement to alter its practices."  *Whitehaven S.F., LLC v. Spangler*, No. 14 Civ. 3677, 2015 WL 8240549, at *1 (2d Cir. Dec. 9, 2015).  N.Y. Exec. Law § 63(15) provides as follows:  "In any case where the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state, in lieu thereof he may accept an assurance of discontinuance of any act or practice in violation of such law from any person engaged or who has engaged in such act or practice."

### 1. Authority of the Attorney General

FedEx argues that the AG did not have underlying authority to enter into the AOC because, as FedEx puts it, the AG was "without authority to institute a civil action to enforce § 1399-*ll*."  FedEx Br. at 15.  FedEx relies on this Court's opinion in *FedEx I*, but misconstrues its holding.  *FedEx I* held only that the 2013 amendment to § 1399-*ll*, which authorized the AG to

---

[12] The State's opposition brief invokes, for the first time, N.Y. Exec. Law § 63(1), which in pertinent part instructs the Attorney General to prosecute "all actions and proceedings in which the state is interested…in order to protect the interest of the state."  NYS Opp'n at 13–15.  The Complaint does not include a single mention of this provision and thus the Court will not consider it on this motion.  It is worth noting, however, that to the extent the State seeks to specifically enforce NYPHL § 1399-*ll* violations through the § 63(1) power, the PACT Act's presumptive preclusion of § 1399-*ll* based on the nationwide scope of the AOC might preclude a § 63(1) action as well.

levy civil penalties, was not retroactive.  Nothing in *FedEx I* limited the AG's authority to, for example, bring an action pursuant to N.Y. Exec. Law § 63(12) to enjoin persistent violations of § 1399-*ll* or collect compensatory damages.[13]  The absence of authority as to one type of remedy does not operate as a complete bar on any civil action—the AG plainly had authority to enforce § 1399-*ll* in particular ways at the time the AOC was executed, and it was that authority that legitimated the AOC.  *Cf. New York v. United Parcel Serv., Inc.*, No. 15 Civ. 1136 (KBF), 2016 WL 502042, at \*19 (S.D.N.Y. Feb. 8, 2016) ("*UPS II*") (upholding the AG's authority to enter into AOC with UPS because AG "had the authority to commence an action for certain specified forms of relief under N.Y. Exec. Law § 63(12) in relation to repeated violations of PHL § 1399-*ll*"); *Frink Am.*, 2 A.D.3d at 1380–81 (upholding AG's authority to enforce § 63(12) remedies not found in underlying statute).

### 2. The AOC Does Not Lack Consideration

The same reasoning resolves FedEx's related contention, that the AOC is unenforceable for lack of consideration because the AG's promise not to bring a § 1399-*ll* action was "entirely illusory in light of his knowing inability to bring such an action."  FedEx Br. at 15–16.  This argument requires FedEx to construe the AOC as merely a promise from the AG not to seek statutory civil penalties that it could not obtain under § 1399-*ll*, but this framing is far too narrow.  First off, the AG had authority to enforce § 1399-*ll* using § 63(12) remedies, and the AOC encompassed an agreement not to pursue those remedies.  *See* AOC ¶ 7.[14]  More generally,

---

[13] The Legislature's stated justification for the 2013 amendment was to "provide[] for more effective enforcement of the statute by permitting both the Attorney General and the Corporation Counsel…to bring actions to recover civil penalties for statutory violations."  N.Y. Sponsors Memo., 2013 S.B. 5215 (Nov. 5, 2013); N.Y. Sponsors Memo., 2013 A.B. 429 (Mar. 14, 2013).  There is no indication, in other words, that the amendment had ambitions beyond providing an additional type of remedy for the City and State.

[14] FedEx submitted a copy of the AOC with its moving brief.  *See* Decl. of Michele L. Pahmer (Doc. 33), Ex. 3.  The Court may consider the contents of the AOC in resolving this motion both because it is "integral" to the Complaint

the AOC "covered a broader range of conduct than PHL § 1399–*ll*," and did not purport, and was

not required, "to specify an exhaustive list of the legal remedies that the []AG might have relied

upon in a theoretical enforcement proceeding" or "expressly provide for only those specific

penalties or other remedies that would been the end result of a successful enforcement action."

*UPS II*, 2016 WL 502042, at *18.  The consideration from the AG, in other words, was far

broader than a mere agreement not to seek civil penalties under § 1399-*ll*—it was an agreement

to halt the AG's investigation and forbear from bringing an enforcement action related to

FedEx's potential violations of a number of state and federal laws, including but not limited to §

1399-*ll*.  *See* AOC at 4 ("[T]he Attorney General accepts the following assurances pursuant to

EL § 63(15) *in lieu of* commencing a civil action against FedEx in connection with the matters

that were the subject of the investigation described in Paragraphs 6 and 7 of this Assurance of

Compliance, *including* any alleged past violations of PHL § 1399-*ll*." (emphasis added)); *see*

*also UPS II*, 2016 WL 502042, at *18 ("The AOD was, effectively, a settlement of a pending

investigation by the NYAG.  In the AOD, UPS clearly received the benefit of the State's

agreement to forego a potential enforcement action for what the State believed to be UPS's prior

violations of state law.").  This consideration was adequate, as a matter of law.

> ### 3. The AOC's Penalties Are Enforceable

FedEx next attacks the enforceability of the AOC's stipulated penalties.  FedEx first

argues that § 63(15) does not, on its own terms, authorize the inclusion of penalties into an

assurance such as the AOC.  FedEx Br. at 16.  But of course § 63(15) does not expressly list *any*

---

and because Plaintiffs had knowledge and possession of the AOC and relied upon it in framing the Complaint.  *See*
*Eaves*, 785 F. Supp. 2d at 244.

remedies that are appropriately included in assurances.[15]  And unlike § 63(12), which empowers

the AG to bring enforcement actions and seek certain remedies against an uncooperative

defendant, § 63(15) contemplates a *voluntary* agreement in which the AG and the counterparty

negotiate and agree on the permissible scope of injunctive and monetary relief going forward.

Consequently, unlike the plain language in § 63(12), there is nothing in § 63(15) that purports to

limit the types of remedial schemes to be included in assurances of compliance.  *Cf.* § 63(15)

(requiring only that "the attorney general has authority to institute a civil action or proceeding in

connection with the enforcement of a law of this state"); *Solil Mgmt. Corp.*, 491 N.Y.S.2d at 246

(upholding § 63(15) agreement requiring landlord to pay rent refunds even where underlying

statute gave housing commissioner exclusive jurisdiction to sue landlord for rent overcharges,

because landlord who "entered into that agreement…waived any objection it might have had to

the Attorney-General's jurisdiction to investigate rent overcharge complaints").  Here, the fact

that the AG could institute a civil action "in connection with" enforcement of the federal and

state laws listed in the AOC, including § 1399-*ll*, is sufficient authority for the penalties that

FedEx agreed to pay.

　　　　FedEx's argument that the AOC's stipulated penalty provisions are impermissible

liquidated damages also fails.  FedEx Rep. at 15–17.  First, the Court echoes the *UPS II* court's

"serious doubts that this liquidated damages rule applies to a deferred-prosecution agreement like

the [AOC], which is distinguishable in important respects from an ordinary commercial

contract," and notes that FedEx "does not cite a single case in which such a stipulated damages

---

[15] The Court rejects FedEx's unsupported contention in its reply brief, FedEx Rep. at 14, that § 63(15)'s authorization of "a stipulation for the voluntary payment by the alleged violator of the reasonable costs and disbursements incurred by the attorney general during the course of his investigation" is meant to be the exclusive remedy provided by any § 63(15) assurance.  FedEx provides no logical basis or authority that would support such an inflexible interpretation.

provision was held unenforceable." *UPS II*, 2016 WL 502042, at *19 n.14. Second, FedEx's

argument that the AOC's penalties could be considered impermissible liquidated damages under

New York law is unconvincing. In New York, "a contractually agreed upon sum for liquidated

damages will be sustained where (1) actual damages may be difficult to determine and (2) the

sum stipulated is not plainly disproportionate to the possible loss." *U.S. Fid. & Guar. Co. v.

Braspetro Oil Servs. Co.*, 369 F.3d 34, 70 (2d Cir. 2004) (internal quotation marks omitted).

FedEx's attempt to decouple the AOC's stipulated penalties from actual damages ultimately

serves to underscore the difficulty of ascertaining actual damages from FedEx's violation of one

or more of the interrelated obligations imposed by the AOC. *See UPS II*, 2016 WL 502042, at *

19 n.14 ("Damages would have been difficult to ascertain in light of UPS's various agreements

contained in the AOD…."). Without a more convincing showing that the AOC's per-violation

penalty is "plainly disproportionate" to the loss from a given violation, FedEx's emphasis on the

fact that the AOC uses the term "penalties" alone is not sufficient to render the AOC's penalty

provisions unenforceable. *See Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d

1015, 1018–19 (N.Y. 1977) ("In interpreting a provision fixing damages, it is not material

whether the parties themselves have chosen to call the provision one for 'liquidated

damages'…or have styled it as a penalty. Such an approach would put too much faith in form

and too little in substance." (citations omitted)).

    4. The Complaint Adequately Alleges
       Equitable Estoppel Concerning the Statute of Limitations

     Finally, FedEx argues that Plaintiffs cannot enforce the AOC for any claimed breaches

that occurred prior to November 12, 2008, because those claims are barred New York's six-year

statute of limitations for contractual actions. FedEx Br. at 17 (citing N.Y. CPLR § 213(2)).

Plaintiffs respond that they have adequately pleaded grounds for the Court to equitably estop FedEx from asserting a statute of limitations defense. NYS Opp'n at 11.

"The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006). "This is the case where a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action," any of which "must be affirmative and specifically directed at preventing the plaintiff from bringing suit." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.) (citations and internal quotations marks omitted), *aff'd*, 579 F. App'x 7 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1702 (2015), *and reconsideration denied*, No. 13 Civ. 4679 (JGK), 2015 WL 4111837 (S.D.N.Y. July 8, 2015). "Absent affirmative conduct on the part of the defendant, 'the plaintiff must demonstrate a fiduciary relationship…which gave the defendant an obligation to inform him or her of facts underlying the claim.'" *Id.* (quoting *Zumpano*, 849 N.E.2d at 930). "[A] plaintiff must also demonstrate reasonable reliance on the defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational." *Id.* at 442–43.

The Court is loath to rule definitively on the equitable estoppel issue at this stage, as it is likely to turn on factual issues like the proximity of CCTA violations to the date of the AOC's execution and the frequency and substance of any communications between the AG and FedEx during that time. At the very least, Plaintiffs have made sufficient allegations for now that equitable estoppel may apply. *See* Compl. ¶¶ 29, 50.

In sum, the Court denies FedEx's motion as to Plaintiffs' AOC claim because: (i) the AG had authority to enter into the AOC, (ii) the AOC did not lack consideration, (iii) the AOC's

penalty provision is enforceable, and (iv) the allegations make it plausible that equitable estoppel will apply to untimely violations of the AOC.

## E. CCTA

The CCTA makes it unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase "contraband cigarettes."  18 U.S.C. § 2342(a).  "Contraband cigarettes" are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp…to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." § 2341(2).  "Together, these provisions establish four elements for a CCTA violation: that a party (1) knowingly 'ship, transport, receive, possess, sell, distribute or purchase' (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps." *City of New York v. Chavez*, No. 11 Civ. 2691 (BSJ), 2012 WL 1022283, at \*3 (S.D.N.Y. Mar. 26, 2012) (quoting *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08 Civ. 3966 (CBA), 2009 WL 2612345, at \*26 (E.D.N.Y. Aug. 25, 2009)).

In *FedEx I*, this Court held that the CCTA did not impose a "single transaction" requirement, and thus Plaintiffs adequately pleaded their CCTA claim by alleging that FedEx shipped over 10,000 cigarettes over the course of multiple transactions.  The Court also held that, for statute-of-limitations purposes, an individual CCTA violation accrues "when the City and State had a complete and present cause of action," *i.e.*, "when the aggregate number of cigarettes first exceeded 10,000."  *See FedEx I*, 91 F. Supp. 3d at 520–22.

FedEx now argues that Plaintiffs' CCTA claim accrued in 2010 because the Complaint alleges that FedEx knowingly shipped "tens of thousands" of unstamped cigarettes between 2005

and 2010, Compl. ¶ 33, but does not identify any further deliveries of over 10,000 cigarettes within the limitations period.  Given the four-year statute of limitations, 28 U.S.C. § 1658(a), and the 2010 accrual date, FedEx contends that the claim is now time-barred because the action was not commenced until November 12, 2014.  FedEx Br. at 17–18; FedEx Rep. at 19–21.

FedEx's position requires too strained a reading of the Complaint.  Plaintiffs here allege, among other things, that FedEx knowingly shipped "tens of thousands of cartons of unstamped cigarettes" on behalf of Shinnecock Indian Outpost from 2006 to 2012, knowingly distributed "thousands of cartons of unstamped cigarettes" to unlicensed sellers on behalf of Smokin' Joe's, J. Conrad Seneca, and Ohserase "until at least 2015," and knowingly delivered into New York "tens of thousands of cartons of cigarettes," some of which were unstamped, on behalf of the twenty-one Cigarette Sellers "[f]rom at least 2005 to the present."  Compl. ¶¶ 34, 52, 63.  FedEx maintains that these allegations describe only *one* CCTA violation because they do not link specific shipment amounts to specific entities, but the two points do not follow—FedEx offers no explanation or support for why a failure to attribute multiple deliveries of over 10,000 cigarettes to individual entities somehow transforms multiple violations into a single one.

The Complaint plausibly alleges that FedEx knowingly shipped over 10,000 unstamped cigarettes during the limitations period, constituting at least one timely CCTA violation. Discovery will reveal the number of total violations, if any, and whether a subset of those violations accrued outside of the limitations period and are therefore time-barred.

## F. RICO

### 1. Standing

"A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and

only when his or her 'actual loss becomes clear and definite.'"  *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 231 (E.D.N.Y. 2014) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994).  "In essence, statutory standing under RICO incorporates an enhanced ripeness requirement: 'a cause of action does not accrue under RICO until the amount of damages becomes *clear and definite.*'"  *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)).

FedEx contends that Plaintiffs' claimed RICO injury here—lost tax revenue—is not sufficiently "clear and definite" because Plaintiffs still have the opportunity to recover those losses either (i) via their CCTA claim, or (ii) via collection of use and/or sales taxes directly from consumers.  FedEx Rep. at 22–26.

Neither of these arguments is availing.  Courts from this district consistently allow CCTA claims and RICO claims alleging predicate CCTA violations to proceed within the same litigation, notwithstanding the possibility that eventual recovery of damages under the CCTA may reduce or negate RICO damages.  *See, e.g.*, *UPS I*, 2015 WL 5474067, at *1; *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 311–12 (S.D.N.Y. 2014); *City of New York v. Gordon*, 1 F. Supp. 3d 94, 111 (S.D.N.Y. 2013); *Chavez*, 2012 WL 1022283, at *6, 8.[16]

---

[16] FedEx argues that, since Plaintiffs' CCTA claim and RICO claim both seek the same lost tax revenue, Plaintiffs will either prevail on their CCTA claim and offset entirely any RICO injury, or lose on their CCTA claim and thus forfeit any viable proof of a RICO predicate.  FedEx Br. at 20.  This leads FedEx to propose, without any support, the novel contention that "Plaintiffs that have a claim directly under a predicate act statute for the exact same alleged damages they seek under RICO are barred by RICO's standing doctrine."  FedEx Rep. at 24 n.15.  Such a rule, read literally, would effectively strip Plaintiffs of a RICO claim altogether.  *Cf. Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) ("Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.").  And even if this argument were correct, FedEx frames it as a reason to dismiss the RICO claim, but any reasonable plaintiff would simply dismiss the predicate-act claim and proceed only with the RICO claim, thus avoiding the offset problem.  *Cf.* FedEx Rep. at 24 (noting that RICO claims are often brought by

Nor have any of these courts found it necessary to dismiss the RICO claims based on the City or State's failure to exhaust all possible means of collecting cigarette use taxes from consumers.  As Plaintiffs point out, none of the cases relied upon by FedEx comes close to holding that RICO's standing requirement forces a state or local government to traverse up and down the distribution chain to try to collect tax revenue from those who bear the "ultimate liability" of a multi-faceted tax scheme.  *See* NYC Opp'n at 25–26 & n.16; *cf. City of New York v. Milhelm Attea & Bros.*, No. 06 Civ. 3620 (CBA), 2012 WL 3579568, at *21 (E.D.N.Y. Aug. 17, 2012) ("[T]he fact that the tax in these transactions could have been collected from the ultimate consumer does not eliminate liability for the prior parties in the distribution chain.  All cigarette transactions…are subject to the backstop 'use tax' in § 471–a; in no other scenario does that provision eliminate the responsibility of wholesalers and retailers to precollect the tax and to sell cigarettes displaying the requisite stamp.").  Plaintiffs have alleged a sufficiently clear and definite injury here to satisfy RICO's standing requirement.

## 2. Proximate Cause

A civil RICO plaintiff must show that the RICO predicate offense was both a "but for" cause and a proximate cause of the injury.  Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," and cannot rest on a link that is "too remote," "purely contingent," or "indirec[t]."  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268, 271, 274 (1992)).  "[T]he compensable injury flowing from a [RICO] violation… 'necessarily is the harm caused

---

plaintiffs who are unable to assert predicate claims under the predicate act statute).  Not that this is a tenable result, since the RICO claim could be dismissed for reasons unrelated to the merits of the predicate violation, leaving the plaintiff empty handed, which is precisely why the claims are allowed to proceed simultaneously.  The Court also notes that FedEx conveniently argues that RICO damages are not "clear and definite" *unless and until* Plaintiffs are awarded a concrete amount of CCTA damages.  The Court rejects FedEx's proposed Catch-22—that the CCTA claim is simultaneously necessary to, and preclusive of, the RICO claim.

by [the] predicate acts.'"  *Id.* at 13 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)).

FedEx argues for dismissal on multiple grounds.  FedEx first revives its prior argument from *FedEx I* that the Plaintiffs' proximate-cause theory goes beyond the "first step" regarding the connection between the predicate conduct and the harm.  FedEx Br. at 22–23 (quoting *Hemi*, 559 U.S. at 10).  FedEx's reliance on *Hemi* is unavailing.  *See Hemi*, 559 U.S. at 9–10 (holding that connection between the alleged enterprise—wire fraud arising from an out-of-state cigarette dealer's failure to file federally-required reports with the State—complicated, but did not directly cause, the City's efforts to collect sales taxes from consumers).  Here, however, as this Court and others in similar cases have already concluded, FedEx's alleged involvement in an enterprise designed to ship unstamped cigarettes into New York City and State was precisely the conduct that led to the Plaintiffs' losing tax revenue.  *City of New York v. Gordon*, No. 12 Civ. 4838 (VSB), 2015 WL 9646053, at *9 (S.D.N.Y. Dec. 10, 2015); *LaserShip*, 33 F. Supp. 3d at 312; *Chavez*, 2012 WL 1022283, at *7.   The alleged scheme's entire purpose was to evade the City and State's cigarette taxing regime, which relies on authorized stamping agents *prepaying* taxes, and the enterprise conduct therefore directly caused the lost tax revenue.  *Cf. Milhelm Attea & Bros.*, 2012 WL 3579568, at *2 ("[T]he cost of the tax is typically passed from the stamping agent wholesaler, to the retailer, and ultimately is borne by the consumer.  *The purpose of this system is to prevent the widespread evasion of New York cigarette taxes*.") (emphasis added). This is a sufficiently direct theory of both but-for causation and proximate causation.[17]

---

[17] The Court is not persuaded, at this stage at least, by FedEx's argument that the number of stamped cigarettes sold and shipped in the absence of the alleged scheme would be smaller than the number of unstamped cigarettes in fact sold and shipped, *i.e.*, the "logic" of Plaintiffs' RICO claim "is to put them in a better position than they would have been in but-for the alleged racketeering."  FedEx Br. at 23 n.18.  This is an argument requiring evidence, and the

FedEx next urges the Court to adopt its view on proximate cause to avoid Plaintiffs' duplicative recovery in the event that Plaintiffs collect on their RICO claim and then pursue consumers for use tax. FedEx Br. at 23. This argument is pure speculation, inappropriate in the motion to dismiss context, and FedEx's reply that proximate cause *in general* is a "legal issue" and thus resolvable at this stage does not somehow entitle the Court to credit FedEx's predictions. FedEx Rep. at 27–28. FedEx also contends that its view on proximate cause should be embraced in order to avoid the difficult task of ascertaining the actual proportion of lost taxes attributable to FedEx's conduct. FedEx Br. at 23. Yet again, this is a premature concern that does nothing to actually alter the close link between FedEx's shipment of unstamped cigarettes and lost tax revenue in this case. Furthermore, it is the Plaintiffs' position at this stage that FedEx is solely responsible for the CCTA violations that serve as the RICO predicate in this case, and that it "will be unnecessary to weigh anyone else's liability." NYC Opp'n at 29.

### 3. Sufficiency of RICO Allegations

FedEx's final RICO challenge is that the allegations in the Complaint are inadequate to make plausible the "enterprise," "operation or management," and pattern elements of the two RICO claims. FedEx Br. at 24.[18]

First, FedEx maintains that the Complaint's pleading of "association-in-fact" is insufficient because it does not create a plausible inference that FedEx worked on behalf of the enterprise itself, rather than merely cooperating with cigarette dealers but firmly in its own self-interest. FedEx Br. at 24 (citing *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d

---

Court must accept the Complaint's allegation that, but-for FedEx's delivery services, the Cigarette Sellers would not have sold as many unstamped cigarettes. Compl. ¶ 83.

[18] "To state a claim under 18 U.S.C. § 1962(c), one of RICO's substantive provisions, a plaintiff must plead four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 665 (2d Cir. 2014) (quoting *Sedima*, 473 U.S. at 496).

Cir. 2014)).  For the same reason, according to FedEx, Plaintiffs failed to adequately plead that

FedEx participated "in the operation or management of the enterprise" because FedEx never

played a part in "directing" the enterprise's affairs.  *Id.* (citing *Reves v. Ernst & Young*, 507 U.S.

170, 185 (1993)).[19]

  The Court finds that the allegations in the Complaint are at least minimally sufficient at

this juncture, given the fact-intensive nature of these issues.  Plaintiffs allege not only that each

cigarette seller and FedEx formed an "association-in-fact" based on the provision of delivery

services essential to the enterprise, but also that each individual seller itself constituted a RICO

enterprise with which FedEx associated.  Compl. ¶¶ 75–76.  FedEx does not even challenge the

latter allegation, which alone precludes dismissal on this element.  NYC Opp'n at 29–30.  The

former allegation remains plausible in the context of the Complaint's other allegations detailing

FedEx's close collaboration with the Cigarette Sellers, including FedEx's knowledge of the

sellers' "business trends, volume, and needs."  *Id.* at ¶¶ 35–49; *see also id.* at ¶ 114 (describing

FedEx's acts with each enterprise as constituting a scheme with the "uniform purpose" of

profiting from the sale and delivery of unstamped cigarettes).[20]  FedEx may prove at summary

judgment or trial that an association-in-fact did not exist because FedEx only cooperated in its

own self-interest, but the Court cannot assume that to be the case at this juncture.

---

[19] To state a civil RICO claim, Plaintiffs must also allege that FedEx was "employed by or associated with an enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…."  18 U.S.C. § 1962(c).  The Supreme Court has interpreted this statutory language to mean that the RICO defendant must have participated "in the operation or management of the enterprise."  *Reves*, 507 U.S. at 185.  In this Circuit, the operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004); *see also LaserShip*, 33 F. Supp. 3d at 310 (observing that the question of operation or management is essentially one of fact).

[20] "An association-in-fact enterprise is 'simply a continuing unit that functions with a common purpose.'"  *Chavez*, 2012 WL 1022283, at *6 (quoting *Boyle v. United States*, 129 S.Ct. 2237, 2245 (2009)).  "It must have at least three 'structural' features: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  *Id.* (quoting *Boyle*, 129 S.Ct. at 2244).

The same is true of Plaintiffs' allegations concerning the operation-or-management test. Plaintiffs have met this relatively modest pleading burden by describing the control and discretion that FedEx exercised over the portion of the enterprise's affairs involving pick-up and delivery of unstamped cigarettes. Compl. ¶ 83. That is a sufficient pleading of participating in the operation or management of the enterprise. *See LaserShip*, 33 F. Supp. 3d at 310.[21]

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS FedEx's motion to dismiss, without prejudice, as to the NYPHL §1399-*ll* and N.Y. Exec. Law § 63(12) claims, and DENIES FedEx's motion to dismiss as to the CCTA, AOC, and RICO claims.

The Clerk of the Court is respectfully directed to terminate the motion and the request for oral argument. Docs. 32, 41.

It is SO ORDERED.

Dated:    March 31, 2016
          New York, New York

Edgardo Ramos, U.S.D.J.

---

[21] The Court also rejects FedEx's argument that the Complaint's failure to attribute specific delivery amounts to specific entities results in insufficient allegations of a "pattern" of racketeering activity, for the same reasons as discussed *supra* III.A.